**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

UNITED STATES OF AMERICA

    v.                                       **No. 4:21-cr-2-BJB**

KARLCHAZE D. THRUSTON

**\* \* \* \* \***

### OPINION & ORDER DENYING MOTION FOR SENTENCE REDUCTION

Karlchaze Thruston pled guilty to two counts of conspiracy to possess illegal drugs with the intent to distribute them. Judgment & Commitment Order (DN 407) at 1–2. He received a sentence of 14 years and 4 months' imprisonment in May 2024. *Id.* at 1, 3. While he was in pretrial custody, Thruston's wife died from kidney failure, leaving their teenage son in the care of Thruston's mother. *See* Supporting Records and Inmate Request to BOP (DN 488-2) at 3–4. Thruston now moves for compassionate release under 18 U.S.C. § 3582 to care for his son *and* his mother, who (according to his motion) has herself become incapacitated as well. Motion for Compassionate Release (DN 488 & 488-2).

**I.**

Before a defendant moves for compassionate release, however, he "must 'fully exhaus[t] all administrative rights' or else … wait for 30 days after the warden's 'receipt of [his] request.'" *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). The Government here argues that Thruston has not exhausted his administrative rights: BOP has no record of a properly filed request for compassionate release. *See* Response (DN 515) at 4–5 (quoting *Alam*, 960 F.3d at 833).

Thruston's motion, however, attaches four "BOP requests" dated between December 12, 2024, and March 20, 2025, each asking for compassionate release. DN 488-2 at 4–7. He also provided a BOP response, dated February 2025, stating that his request was being "rejected and returned" to him because he "did not submit a complete set" of the request forms. *Id.* at 8. So at least some evidence of exhaustion exists. Whether it suffices, though, proves unnecessary to decide. Because even assuming Thruston has exhausted his administrative remedies, his motion fails on the merits.

## II.

A district court may grant a compassionate-release motion only if the defendant meets three conditions. *See United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020) (describing "three-step inquiry" for motions brought under § 3582(c)(1)(A)).[1] First, the defendant "must show that extraordinary and compelling reasons warrant the [sentence] reduction." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quotation marks omitted). Second, the court "must confirm that any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quotation marks omitted). Third, the defendant "must persuade the district judge to grant the motion after the court considers the [18 U.S.C.] § 3553(a) factors." *Id.* These factors include the defendant's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).

The reasons that Thruston has provided in support of his motion are not extraordinary and compelling. Nor do they entirely comport with the Sentencing Commission's policy statements. Further, even if his reasons warranted release, the § 3553 factors counsel against release.

### A. Policy Statements Regarding Extraordinary and Compelling Circumstances

Because Thruston mainly relies on two Policy Statements defining extraordinary and compelling circumstances, the first two steps largely overlap here.

Courts may reduce sentences pursuant to § 3582(c)(1)(A) only if "extraordinary and compelling reasons warrant [a sentence] reduction." *Jones*, 980 F.3d at 1101. The statute does not define "extraordinary and compelling," but "those words still have their ordinary meaning." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (quotation marks omitted). "And when Congress enacted the statute in 1984, 'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971) at 807). "'[E]xtraordinary and compelling' reasons are those that are especially unusual and convincing." *Rutherford v. United States*, 146 S.Ct. 1320, 1330 (2026) (collecting dictionary definitions). In addition, "facts that existed when the defendant was sentenced cannot later be construed as extraordinary and

---

[1] 18 U.S.C. § 3582 (c)(1)(A)(ii) provides that defendants who meet specific requirements regarding their sentence, behavior, and age (70+ years) are not required to show extraordinary and compelling reasons. *See United States v. Jones*, 980 F.3d 1098, 1101 n.3 (6th Cir. 2020). Thruston does not invoke this provision, which does not appear to apply in this case.

compelling justifications for a sentence reduction." *Hunter*, 12 F.4th at 562 (quotation marks omitted).

Thruston's motion invokes two examples of extraordinary and compelling circumstances, identified in Sentencing Commission policy statements, that he contends justify relief here. The first is § 1B1.13(b)(3)(A), seemingly on the ground that the other caregivers for his minor child—his wife and mother—have died and become incapacitated, respectively. Motion at 5.[2] The second is § 1B1.13(b)(3)(B)–(D), on the related ground that his mother's incapacitation leaves him as *her* only available caregiver as well. *Id.*[3]

As an initial matter, the death of Thruston's wife cannot support relief. That's because she died in February 2022—more than two years before he was sentenced. *See* Motion at 2; DN 488-2 at 3. "Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as extraordinary and compelling." *Hunter*, 12 F.4th at 569 (quotation marks omitted); *see also United States v. Lawrence*, 609 F. Supp. 3d 544, 549 (E.D. Mich. 2022) ("The death of the mother of Defendant's child is not extraordinary or compelling because it was known at the time of sentencing.").

This argument fails for an additional reason: Thruston hasn't shown that without release his son will lack a caregiver. By Thruston's own account, his mother was able to step in and care for his child. DN 488-2 at 4–7. True, § 1B1.13(b)(3)(A) of the Sentencing Commission policy statement (unlike § (b)(3)(B)–(D)) does not explicitly require the defendant to be the minor child's *only* available caregiver. But the circumstances here, taken as a whole, do not suggest that the wife's death is an extraordinary and compelling reason for early release. "[C]ourts have a duty to independently interpret the statute and effectuate the will of Congress," *Rutherford*, 146 S.Ct. at 1334 (quotation marks omitted), and several courts have considered the availability of alternative caregivers under § 1B1.13(b)(3)(A). *See, e.g.*, *United States v. Foster*, No. 5:18-cr-472, 2024 WL 3715442, at *4 (N.D. Ohio Aug. 8, 2024) (requiring that the defendant "prove that he would be the only available and suitable caregiver for his son," whose mother was incapacitated); *United States v. Flake*, No. 1:19-cr-508-1, 2025 WL 3496565, at *3 (M.D.N.C. Dec. 5, 2025) (collecting cases). It is certainly tragic for a parent to pass away, leaving her son in the care of his grandmother while his father serves time in prison for serious crimes. But such a

---

[2] Section 1B1.13(b)(3)(A) identifies as an "[e]xtraordinary and compelling reaso[n]" for a reduction in term of imprisonment "[t]he death or incapacitation of the caregiver of the defendant's minor child."

[3] Section 1B1.13(b)(3)(C) likewise identifies "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" as a potentially extraordinary and compelling reason justifying early release.

situation is not "especially unusual and convincing" enough to warrant early release. *Rutherford*, 146 S.Ct. at 1330.

To his second ground for relief, the challenges faced by Thruston's mother in caring for his teenage son likewise do not constitute extraordinary and compelling circumstances. *See* DN 488-2 at 4–7. She is apparently in her 60s, struggling financially, and seeing "her health deteriorate to where she won't even be able to support herself" due to the stress of her situation. *Id.* at 6. As unfortunate as this may be, it doesn't distinguish her situation from that faced by many others. "Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019). Further, the economic hardship placed upon defendants' family members by incarceration "is a hardship placed on all inmates who earned an income prior to incarceration." *United States v. Price*, No. 5:20-cr-24, 2022 WL 3153776, at *2 (E.D. Ky. Aug. 8, 2022). It is hardly unusual.

As to her asserted incapacitation, the Sentencing Commission's policy statement contemplates compassionate release when the caregiver of a defendant's minor child has become incapacitated. § 1B1.13(b)(3)(A). The policy statement does not define the term "incapacitation," but courts have interpreted it to exclude even "serious medical conditions." *See, e.g.*, *United States v. Noble*, No. 1:14-cr-135, 2025 WL 3753981, at *4 (N.D. Ohio Dec. 29, 2025). For example, incurable cancer requiring assistance for daily activities does not necessarily imply incapacitation. *United States v. McDowell*, No. 5:10-cr-189, 2025 WL 278498, at *1 (N.D. Ohio Jan. 23, 2025). A conventional dictionary definition of "incapacitated" is "deprived of capacity or natural power: made incapable of or unfit for normal functioning." WEBSTER'S COLLEGIATE (12th) at 811. A Bureau of Prisons program statement defines "incapacitation" to include a person who is "completely disabled," such that she "cannot carry on any self-care and is totally confined to a bed or chair." *See United States v. Marshall*, No. 3:16-cr-4, 2020 WL 114437, at *3 n.2 (W.D. Ky. Jan. 9, 2020) (citing BOP Program Statement 5050.50).[4] A more stringent legal definition of "*permanent* incapacitation," meanwhile, covers "less than 100%" disability, albeit "with no possibility of improvement and no ability to live without assistance for the rest of the person's natural life." *See* PERMANENT INCAPACITATION, BLACK'S LAW DICTIONARY (12th ed. 2024).

Thruston has not demonstrated that his mother is incapacitated under any of these definitions. He has not alleged that she currently has any health problems or difficulties with daily activities—and certainly none that would make her "incapable

---

[4] A separate provision in the program statement promulgated by the Bureau of Prisons, 5050.50 at 10, defines "incapacitation" to include those with a "severe cognitive deficit," but no such condition is at issue in this case.

of … normal functioning." *See* WEBSTER'S COLLEGIATE (12th) at 811. Rather, he anticipates that the stress of caring for her grandson "*can/will* make her health deteriorate." DN 488-2 at 7 (emphasis added).

The same reasoning shows why Thruston's mother's health can't support compassionate release based on his status as the "only available caregiver for the parent." USSG Policy Statement §1B1.13(b)(3)(C). That she is currently caring for Thruston's son, moreover, suggests that she still possesses some capacity to take care of herself, DN 488-2 at 4–7, even though the burden of her grandson's care undoubtedly renders her situation more taxing.

Even if Thruston's mother were incapacitated, an incapacitated parent only constitutes extraordinary and compelling circumstances if the defendant is the parent's "*only* available caregiver." USSG Policy Statement §1B1.13(b)(3)(C) (emphasis added). Thruston's motion, however, doesn't show that no one else could take care of his mother. At least as of 2021, Thruston had several brothers living in Kentucky. Detention Hearing Transcript (DN 251) at 3. And his motion doesn't address their ability to care for their mother. Many courts have denied such motions unsupported by evidence that other family members cannot care for a defendant's aging parents. *See, e.g.*, *United States v. Brewer*, No. 11-20537, 2022 WL 1125797, at *2–3 (E.D. Mich. Apr. 15, 2022) (assertion that defendant was mother's only potential caregiver was "not supported by affidavits from any of [his] siblings"); *United States v. Gilbert*, No. 16-20414, 2021 WL 5085846, at *3 (E.D. Mich. Nov. 2, 2021) (similar). "The defendant must clear a high bar to show that he is the only available caregiver; other potential caregivers can be significantly burdened and still be available." *United States v. Snow*, No. 5:18-cr-52, 2025 WL 1943799, at *3 (W.D. Ky. July 15, 2025). Thruston hasn't attempted, much less cleared, that high hurdle here.

## B. Section 3553(a) Factors

Even if Thruston presented extraordinary and compelling circumstances, he would remain ineligible for a reduced sentence under the § 3553(a) sentencing factors.

Thruston bears the burden to "persuade the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054. He must make a "compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Sherwood*, 986 F.3d at 954. Yet neither his motion nor its attachments discuss the factors at all. The motion asserts that he has a job waiting for him. It also includes his "Individualized Needs Plan," which describes Thruston's clean disciplinary history and completion of several education courses. DN 488-2 at 14–15. Whatever weight afforded these statements, the § 3553(a) sentencing factors still counsel against early release.

5

*First,* Thruston's history and characteristics weigh against a sentence reduction. He "certainly is no stranger to the justice system," and he committed the offenses in question "despite … earlier encounters with [the] law." Sentencing Hearing Transcript (DN 432) at 13:3–5. Thruston's criminal history is long and, especially in the past, has been severe. His record begins at the age of thirteen. Final Presentence Investigation Report (DN 387) at 13. Since then, he has been convicted of several crimes, including burglary, assault, possession of a controlled substance, complicity to criminal mischief, complicity to receiving stolen property, and non-support. *Id.* at 13–18. In all, the severity of his criminal history resulted in a criminal-history category of V, the second highest category. *Id.* at 18.

*Second*, releasing Thruston would "fail to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense." *United States v. Thomas*, No. 3:12-cr-119, 2022 WL 1421849, at *3 (W.D. Ky. May 5, 2022) (discussing § 3553(a)(2)(A)). Thruston pled guilty to conspiracy to possess with intent to distribute 57.9 kilograms of methamphetamine and 1.4 kilograms of fentanyl. *See* PSR at 11. These are large quantities of dangerous drugs that have destroyed families and wreaked havoc on communities in this state. Sentencing Hearing Transcript (DN 432) at 26:24 –27:9.

*Third*, courts may "consider the amount of time that a defendant has served on a sentence when deciding whether to grant a sentence reduction." *United States v. Ruffin,* 978 F.3d 1000, 1008 (6th Cir. 2020) (quotation marks omitted). Thruston's charges carried a mandatory minimum sentence of 120 months, and the Court sentenced him to 172 months. PSR at 23; Judgment & Commitment Order at 3. With a projected release date of May 27, 2033, he has served less than the statutory minimum and less than half of his total sentence. *See* DN 488-2 at 14. Releasing him more than six years early would not fairly reflect the severity of his offense—and could also raise the risk of unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6) ("unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). The Sixth Circuit has also suggested that compassionate release before a defendant has served the minimum sentence stands in tension with Congress' minimum-sentencing statutes: "§ 3582(c)(1)(A)(i)—which says nothing at all about statutory mandatory minimums—could never empower a court to reduce a sentence below the statutory minimum portion of that sentence." *United States v. Bricker*, 135 F.4th 427, 447 (6th Cir. 2025).

None of the other § 3553(a) factors support Thruston's claim. *See Jones*, 980 F.3d at 1114 ("a district judge need not specifically articulate its analysis of every single § 3553(a) factor") (cleaned up).

## ORDER

Because the record fails to establish extraordinary and compelling reasons consistent with the applicable policy statement, and because the 3553(a) factors counsel against his release, the Court denies Thruston's motion for compassionate release (DN 488).  The Court also grants the United States' unopposed motions for extensions of time in the briefing on Thruston's motion for compassionate release (DNs 504 & 512).

Benjamin Beaton, District Judge

United States District Court

July 16, 2026

7